IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRADLEY JAMES ALBERT,

     Plaintiff,

v.

DISCOVER BANK,

     Defendant.

CIVIL ACTION FILE NO.

1:23-cv-1530-MLB-JKL

## ORDER AND FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant Discover Bank's motion to dismiss *pro se* Plaintiff Bradley James Albert's amended complaint and Plaintiff's Motion to Strike or Motion for a Second Amended Complaint ("Motion to Strike"). [Docs. 14, 19.]   For the reasons that follow, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED**.  [Doc. 14.]  Plaintiff's Motion to Strike is **DENIED**.  [Doc. 19.]

### BACKGROUND

On April 14, 2014, Defendant sued Plaintiff in the Magistrate Court of Gwinnett County, Georgia (the "State Action"), seeking to collect on a credit card debt in Plaintiff's name in the amount of $6,587.37.  [*See* Doc. 8 at 9-10; *see also*

Doc. 14-1 at 29-36.][1]  After Plaintiff's default, judgment was entered against him on July 17, 2014, in the amount of $6,587.37.  [*See* Doc. 14-1 at 33.]  Following entry of judgment, Defendant obtained a garnishment over Plaintiff's wages on April 4, 2017,[2] and on May 16, 2019, Defendant filed a satisfaction of judgment with the Magistrate Court of Gwinnett County.  [*Id.* at 36.]

On December 17, 2020, Plaintiff sued Defendant in this Court (the "Prior Federal Action").  *See Albert*, Case No. 1:20-cv-5146-MLB, Doc. 1.  In that case, Plaintiff alleged that the credit card debt at issue in the State Action was not his; that Defendant's process server in the State Action lied about serving him; and that Defendant fraudulently opened another credit card account under his name in 2019 that had a balance of $1,787.00, which he had not accrued.[3]  *Id.* at 1-8.  Based upon

---

[1] The Court may properly take judicial notice of the state court docket entries.  *See McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (collecting cases).  A copy of the complaint, affidavit of service, judgment, and satisfaction of judgment from the State Action are attached as Exhibit A to Defendant's motion to dismiss.  [*See* Doc. 14-1 at 29-36.]

[2] Plaintiff attached a copy of the garnishment order to his prior federal action. *See Albert v. Discover Bank*, Case No. 1:20-cv-05146-MLB, Doc. 1 at 27 (N.D. Ga.).

[3] Defendant repeatedly asserts that the alleged second credit card account is in reality the same account at issue in the State Action, and states that two exhibits "clearly demonstrate[]" this fact.  [*See* Doc. 14-1 at 5, n.4 (citing Ex. A to the motion to dismiss and Ex. B to the complaint in the Prior Federal Action); *see also id.* at 9, n.5.]  Defendant does not explain why the two exhibits clearly establish that the accounts are the same.  And while it may be the case that the accounts are in fact the same (and that Plaintiff merely obtained a snapshot of the original

2

the foregoing, he asserted claims for fraud under 18 U.S.C. § 1001; breach of fiduciary duty; negligence; breach of contract and the covenant of good faith and fair dealing; breach of confidentiality; indemnification; tortious interference with business expectations; and punitive damages. *Id.* at 8-17.

Defendant moved to dismiss the Prior Federal Action for insufficient service of process on March 8, 2021. *Albert*, Case No. 1:20-cv-5146-MLB, Doc. 7. In the motion, Defendant explained that Plaintiff merely mailed a copy of the complaint to its post office box in Salt Lake City, Utah, and argued that such a mailing was insufficient to effectuate service. *Id.* Following Defendant's challenge, Plaintiff did not file any proof of service, and entirely failed to respond to the motion. On May 27, 2021, the Court granted Defendant's motion and dismissed the case. *See*

---

account in his credit report at a point in time before the garnishment satisfied the underlying debt), the two exhibits do not provide full clarity on the situation. Exhibit A to the motion to dismiss merely shows that the State Action involved a Discover Bank credit card account number ***ending in 1079***, with a purported debt of $6,5,87.37. [*See* Doc. 14-1 at 31.] Meanwhile, Exhibit B to the complaint in the Prior Federal Action shows that the Experian credit report for Plaintiff, run in January 2019, included a credit card debt of $1,787.00 with Discover Bank related to an account number ***starting with 601100***. *See Albert*, Case No. 1:20-cv-5146-MLB, Doc. 1 at 36-39. Without more from Defendant, these materials do not lead to the inexorable conclusion that the two accounts are the same.

To be clear, the Court does not pretend to resolve the factual issue of whether the two accounts are in fact the same. However, taking all reasonable inferences in Plaintiff's favor, as the Court must at the present juncture, the undersigned cannot conclude that they are.

*Albert*, Case No. 1:20-cv-5146-MLB, Docs. 9, 10.  Plaintiff thereafter sought reconsideration of the dismissal order, and then appealed the order to the Eleventh Circuit; nevertheless, reconsideration was denied on October 4, 2021, and the Circuit Court affirmed the dismissal on April 21, 2022.  *Albert*, Case No. 1:20-cv-5146-MLB, Docs. 11, 12, 24, 25; *see also Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022) (affirming dismissal).

Roughly a year later, on April 7, 2023, Plaintiff filed the present action.  [Doc. 1.]  After the Court reviewed his initial complaint and found his jurisdictional allegations lacking, Plaintiff amended his complaint on May 26, 2023.  [Doc. 8; *see also* Docs. 4, 7.]

In his amended complaint, Plaintiff reasserts he has been the victim of identity theft; that the original credit card debt was not his; that a second credit card account was fraudulently opened in his name; and that he was never served in the State Action.[4]  [Doc. 8.]  In addition to reiterating those contentions, Plaintiff now alleges that Defendant intentionally and maliciously directed him to attempt service in the Prior Federal Action via its post office box address in Salt Lake City

---

[4] Oddly, in an email attached to his complaint in the Prior Federal Action, Plaintiff asserts that it was in fact his brother who received service at Plaintiff's residence in the State Action.  *See Albert*, Case No. 1:20-cv-5146-MLB, Doc. 1 at 40.

4

(apparently in a convoluted attempt to manufacture an opportunity to have the case dismissed on improper service of process grounds); that Defendant knew that the two credit card accounts were fraudulently issued; and that the cards and debt were somehow "fraudulently registered and maintained by Defendant for the Defendant's benefit of a tax write off," the purported mechanics of which are essentially inscrutable as set forth in the amended complaint.  [*Id.* at 10-11.] Plaintiff also complains that the District Court's and Eleventh Circuit's orders in the Prior Federal Action amount to "unjust derogatory" orders that caused "new additional public [f]raud, harassment, intimidation, [and] public embarrassment." [*Id.* at 9.]  On top of being forced to repay the purportedly fraudulent debt and the Courts' orders, Plaintiff contends he has faced delays in licensing with his investment firm, potential future employment problems, and emotional distress.

Based upon the foregoing, Plaintiff now asserts the following causes of action against Defendant:

- violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, for failing to mail information relating to the alleged credit card account(s) or the State Action; making false representations in the State Action to obtain default judgment and in the Prior Federal Action to avoid service; and refusing to validate either of the two alleged credit card debts;

5

- fraud under O.C.G.A. § 51-6-2 for allegedly giving Plaintiff an improper postal address for service in the Prior Federal Action;

- tolling of the limitations period of fraud under O.C.G.A. § 9-3-96 based upon Defendant's purportedly improper service instructions in the Prior Federal Action;

- tortious interference with business relations[5] because Defendant communicated with his employer about garnishing Plaintiff's wages, which caused distress, delayed approval of an investment or broker license, and impacted his future employment prospects;

- breach of fiduciary duty in relation to the service instructions in the Prior Federal Action and opening a second credit card account for Plaintiff without authorization;

- negligence for having allowing a second credit card account to be opened;

---

[5] Because Plaintiff does not identify any contract underpinning his "Tortious Interference with Business Expectancy" claim, the Court understands it to be a claim for tortious interference with business relations under Georgia law. *See Griffin v. Turner*, 350 Ga. App. 694, 697 (2019) ("To recover under a theory of tortious interference with contractual relations, [plaintiff] must show "the existence of a valid contract and that [defendant] acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with [plaintiff], thereby causing [plaintiff] financial injury."); *Brathwaite v. Fulton-DeKalb Hosp. Auth.*, 317 Ga. App. 111, 113 (2012).

- breach of contract and the covenant of good faith and fair dealing in relation to the purported service instructions in the Prior Federal Action;

- breach of confidentiality for allowing credit card accounts to be registered in his name using his personal information;

- indemnification, which appears to simply be an accounting of the various requested damages in this case;

- "Humiliation From Unjustifiable Derogatory Order" in relation to the orders in the Prior Federal Action; and

- punitive damages.

[*Id.* at 11-31.]

On August 16, 2023, Defendant moved to dismiss Plaintiff's amended complaint. [Doc. 14.] Defendant contends that Plaintiff's claims fail for a number of reasons. First, Defendant argues that the litigation privilege immunizes its conduct in the State Action and Prior Federal Action against the type of claims Plaintiff has asserted. [*See* Doc. 14-1 at 7-8.] Next, Defendant urges that the *Rooker-Feldman* doctrine[6] prohibits Plaintiff from relitigating the judgment in the

---

[6] The *Rooker-Feldman* doctrine—named for two Supreme Court cases, *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—prevents federal district courts from hearing what

State Action, which ultimately determined that Plaintiff was responsible for the underlying credit card debt.  [*Id.* at 8-11.]  Finally, Defendant argues that each of Plaintiff's causes of action fails to state a plausible claim for relief in its own right.  [*Id.* at 11-25.]  The Court takes up these arguments below.

## ANALYSIS

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While it need not provide "detailed factual allegations," a complaint must provide factual allegations sufficient to plausibly set forth a plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do."  *Id.* The court is not required to accept as true legal conclusions couched as factual statements, *Iqbal*, 556 U.S. at 678, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief," as required by

---

are essentially appeals from state court decisions.  *See Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018).

Rule 8(a)(2).  *Id*. at 679 (internal quotation marks, bracket, and citation omitted). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or a claim is based on a meritless legal theory, dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In the case of *pro se* litigants, a complaint is to be "liberally construed" and "must be held to a less stringent standard than formal pleadings drafted by lawyers."  *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).  However, this lenient standard does not shield a *pro se* litigant from complying with minimum requirements of the Federal Rules of Civil Procedure, and a court need not accept as true legal conclusions or unwarranted factual inferences in a *pro se* complaint.  *Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *6 (N.D. Ga. Dec. 26, 2012) (citing *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002) and *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006)).  So, while a *pro se* complaint need not contain "detailed factual allegations," it must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quotation omitted).

With this standard in mind, the Court now turns to its review of Plaintiff's asserted claims.

## B.    Litigation Privilege

As noted above, Defendant first argues that Plaintiff cannot "support his claims in this action with allegations pertaining to statements or actions made by Discover in the previous cases or with allegations regarding the validity of orders already entered by the Court," because "Georgia has adopted the "litigation privilege" which establishes 'immunity of parties and witness from liability for their conduct in judicial proceedings.'" [Doc. 14-1 at 12 (citing *Watkins v. Capital City Bank & Guar.*, No. 1:19-CV-04345-ELR-CMS, 2020 WL 9607008, at *4 (N.D. Ga. Jan. 31, 2020)).]

According to Georgia law:

> All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

O.C.G.A. § 51-5-8.[7]  Based upon the language in the final clause of this statutory provision, Georgia courts have limited the application of this absolute litigation

---

[7] In making its argument, Defendant did not identify the exact statutory basis of the privilege it sought to rely upon, but did cite to *Watkins*, which relied upon the privileges contained in O.C.G.A. §§ 51-5-8 and 51-5-7.

privilege to the defamation context, though they do allow that the privilege "applies beyond the strict definition of 'pleadings'" as that term is defined elsewhere in Georgia law. *Campbell v. High Tech Rail & Fence, LLC*, No. 3:18-CV-4-TCB, 2019 WL 13207596, at *5 (N.D. Ga. Oct. 16, 2019); *see also Williams v. Smith, White, Sharma & Halpern, P.A.*, No. 1:09-CV-0105-TCB-AJB, 2009 WL 10669537, at *3 n.2 (N.D. Ga. May 20, 2009) (same).

A conditional privilege has also been extended to counsel for a party involved in litigation.   Specifically, O.C.G.A. § 51-5-7(7) provides that the "[c]omments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith" are deemed privileged, albeit conditionally privileged.   "To overcome a conditional privilege and establish liability, a plaintiff must allege and show actual malice." *Watkins*, 2020 WL 9607008 at *4 (citing *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 333 (1999)).

In this case, Defendant has not explained which form of the litigation privilege it seeks protection under, how the litigation privilege would apply to Plaintiff's claims, or which of Plaintiff's allegations or claims—none of which include defamation—are purportedly based upon statements protected by the litigation privilege.   Accordingly, because Plaintiff has not asserted any defamation claim in this lawsuit, because the gravamen of Plaintiff's claims relates to

statements and conduct occurring outside of formal pleadings (as Defendant's arguments pertain to the absolute privilege of O.C.G.A. § 51-5-8), and because Plaintiff has affirmatively alleged that counsel's representations about service were in fact maliciously made (as Defendant's arguments pertain to the condition privilege contained in O.C.G.A. § 51-5-7(7)), the outright dismissal of Plaintiff's claims on these grounds is not appropriate.  *See Wilferd v. Digital Equity, LLC*, No. 1:20-CV-01955-SDG, 2021 WL 1814784, at *8 (N.D. Ga. May 5, 2021) ("That allegation may implicate the litigation privilege.  Even assuming it does, however, the Court finds that outright dismissal of the counterclaim at this stage is not appropriate.   The gravamen of Defendants' counterclaim concerns Wilferd's statements about [the lawsuit] in the Facebook post.  Those statements occurred outside this litigation and are not protected by any privilege."); *see also Troutman v. Jefferson Cap. Sys., LLC*, No. 5:19-CV-30 (MTT), 2019 WL 2656212, at *1, *5 (M.D. Ga. June 27, 2019) (rejecting barebones argument that "state law immunity principles" barred plaintiff's FDCPA claim based upon Defendant's "filing [a] collection action without collection action without any intention of proving the debt").

## C.   *Rooker-Feldman* **Doctrine**

Defendant next argues that the *Rooker-Feldman* doctrine divests this Court of jurisdiction to hear the case.  [Doc. 14-1 at 8-11.]   "The *Rooker-Feldman*

doctrine is a recognition that federal appellate jurisdiction over state-court judgments is vested only in the Supreme Court." *Williams v. Cap. One Bank (USA) N.A.*, 785 F. App'x 741, 744 (11th Cir. 2019) (citing *Lance v. Dennis*, 546 U.S. 459, 463 (2006)); *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). (explaining that "federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court"). In practice, the doctrine prevents "federal courts from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Burlison v. Williams*, 557 F. App'x 830, 832 (11th Cir. 2014) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Based upon the foregoing, the *Rooker-Feldman* doctrine applies to any claims "'inextricably intertwined' with the state court's judgment." *Casale*, 558 F.3d at 1260; *see also Target Media*, 881 F.3d at 1286 ("We . . . consider whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment."). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (quotations and citations omitted). As a result, the class of federal

13

claims that [the Eleventh Circuit has] found to be 'inextricably intertwined' with state court judgments is limited to those raising a question that was or should have been properly before the state court." *Target Media*, 881 F.3d at 1286; *see also Casale*, 558 F.3d at 1260 ("It does not apply, however, where a party did not have a 'reasonable opportunity to raise his federal claim in state proceedings.'") (quoting *Powell v. Powell*, 80 F.3d 464 (11th Cir. 1996)).

Plaintiff argues broadly that the doctrine should not apply because he had no reasonable opportunity to raise his claims in the State Action, since the judgment in that case resulted from default and since Defendant allegedly failed to serve him. [Doc. 8 at 2-5.] But in reciting this general proposition, Plaintiff mistakes what the "reasonable opportunity" requirement actually entails. Courts in this Circuit and elsewhere have routinely applied the *Rooker-Feldman* doctrine in the context of state court default judgments. *See, e.g.*, *Williams v. Equifax Info. Servs., Inc.,* No. 5:17-CV-01216-CLS, 2018 WL 4510524, at *7 (N.D. Ala. Sept. 20, 2018) (considering doctrine in default judgment context but declining to apply because the current claims involved post-judgment conduct), *aff'd sub nom. Williams v. Cap. One Bank (USA) N.A.*, 785 F. App'x 741 (11th Cir. 2019); *Butler v. Portfolio Recovery Assocs., LLC,* No. 1:14-CV-2573-MHS-RGV, 2015 WL 13777349, at *4 (N.D. Ga. July 30, 2015) ("Plaintiff's federal action is therefore inextricably intertwined with the default judgment of the Magistrate Court of Gwinnett County

14

. . . ."), *report and recommendation adopted*, 2015 WL 13777897 (N.D. Ga. Aug. 25, 2015); *Graham v. Tasa Grp., Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228, at *7 (N.D. Ala. Mar. 2, 2015) (collecting case). As a sister Circuit has explained, "[i]n deciding whether [a federal plaintiff] lacked a reasonable opportunity to present its claims in state court, we focus on difficulties caused not by opposing parties, but by state-court rules or procedures." *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). Thus, if a plaintiff has had the opportunity to "show[] up" to assert his claims in state court, even if he did not take advantage of that occasion, it cannot be said that he lacked a reasonable opportunity. *See id.* at 294 (citing *Manley v. City of Chi.*, 236 F.3d 392, 397 (7th Cir. 2001) (holding that a plaintiff "cannot avoid *Rooker-Feldman* by simply not submitting his claim in state court")).

Along these lines, the Eleventh Circuit has specifically observed that "O.C.G.A. § 9-11-60, which provides [that] a void judgment may be attacked by any court," in fact "establishes a method for attacking Georgia state court judgments, but only *in* Georgia state courts." *Rice v. Grubbs*, 158 F. App'x 163, 166 (11th Cir. 2005) (citing *Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1558 (11th Cir. 1993)); *see also Mells v. Weizmann*, 828 F. App'x 701, 704 (11th Cir. 2020) (finding that a *pro se* plaintiff had a reasonable opportunity to raise his claims in state court, despite failing to receive "adequate notice" of the state proceedings,

15

because he could have raised the arguments mustered against the judgment in a "state court appeal" of the final order in the state court case). Based upon this, the Eleventh Circuit has concluded that Georgia litigants have a reasonable opportunity to raise the issue of improper or faulty service with state courts and state appellate courts, but only there. *Rice*, 158 F. App'x at 166; *see also Flatau v. Sherman Grp., LLC*, No. 5:14-CV-245 (MTT), 2015 WL 8773299, at *5 (M.D. Ga. Dec. 14, 2015) (citing *Rice* to conclude that the plaintiffs' argument "that [they] may not have been properly served does not prevent the application of the *Rooker-Feldman* doctrine"). In this case, then, Plaintiff had a reasonable opportunity to challenge the purported improper service and default judgment from the State Action in state court, and as result, his argument on this point fails.[8]

All of that said, Defendant's general contention—that the Court is divested of jurisdiction over ***all of Plaintiff's claims*** under *Rooker-Feldman*—is underdeveloped. Indeed, it is essentially two paragraphs, and Defendant fails to explain how each and every one of Plaintiff's claims are in "inextricably

---

[8] This is true even when a plaintiff asserts that "that defendants made misrepresentations in connection with state court proceedings," as Plaintiff does here. *See Bey v. Carrington Mortg. Servs., LLC*, No. 1:15-CV-4135-MHC-RGV, 2016 WL 11567829, at *3 (N.D. Ga. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 11567830 (N.D. Ga. Mar. 24, 2016) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002)).

intertwined" with the state court judgment in the State Action.  [*See* Doc. 14-1 at 10-11.]  And as the Eleventh Circuit has admonished, "the application of the *Rooker-Feldman* doctrine is a narrow, claim specific inquiry," one that requires a "claim-by-claim approach."  *Davis v. Nahmias*, No. 21-14424, 2022 WL 5128153, at *2 (11th Cir. Oct. 5, 2022) (citing *Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021)).  Accordingly, because many of Plaintiff's claims involve Defendant's conduct following the proceedings in the State Action or that are otherwise independent of that Action, *see Williams*, 785 F. App'x at 744-45, the Court will take up Defendant's argument only in relation to those claims that clearly implicate the judgment in the State Action to determine whether those claims are "inextricably intertwined" with it.

### C.   Plaintiff's Individual Claims Fail as a Matter of Law

Regardless of the foregoing, Defendant argues that each of Plaintiff's causes of action fails to a state a plausible claim for relief.  [Doc. 14-1 at 11-36.]  And while Plaintiff has responded to Defendant's arguments that the litigation privilege bars certain aspects of her claims and that the *Rooker-Feldman* doctrine divests the Court of jurisdiction, he has not responded to Defendant's arguments that his individual claims fail to state a plausible claim for relief.  [*See generally*, Doc. 18, 19.]  Even so, "an unopposed motion to dismiss is not automatically due to be granted:  rather, the Court is still required to consider the merits of the motion."

*Cosby v. Deutsche Bank Nat'l Tr.*, No. 1:16-CV-3948-MHC-JCF, 2017 WL 11094248, at *3 (N.D. Ga. Apr. 17, 2017) (cleaned up) (collecting cases). Accordingly, the undersigned must still examine the substance of Plaintiff's claims to determine whether dismissal is appropriate.

### 1.   FDCPA

As discussed, Plaintiff's first cause of action asserts that Defendant violated the FDCPA when it allegedly failed to send Plaintiff information relating to the alleged credit card account(s), the underlying debt, or the State Action; when it purportedly made false representations in the State Action to obtain default judgment; when it made misrepresentations in the Prior Federal Action to avoid service; and when it refused to validate either of the two alleged credit card debts. [Doc. 8, Count 1.]   Defendant now argues that dismissal is warranted because Plaintiff has not plausibly alleged that it is a "debt collector" such that liability would attach under the statute.   [Doc. 14-1 at 11-13.]   The undersigned agrees.

The FDCPA "was passed 'to eliminate abusive debt collection practices,' to ensure that 'debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' and to promote consistent state action in protecting consumers against debt collection abuses." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312-13 (11th Cir. 2015) (quoting 15 U.S.C. § 1692(e)).   To state a claim under the FDCPA, "a plaintiff must allege, among other

18

things (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012); *see also Anderman v. JP Morgan Chase Bank, Nat'l Ass'n*, 803 F. App'x 290, 292 (11th Cir. 2020).   Under the FDCPA, a "debt collector" includes any person or entity (1) whose "principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."   15 U.S.C. § 1692a(6); *see also Davidson*, 797 F.3d at 1314; *Reese*, 678 F.3d at 1218.

Plaintiff has not alleged anywhere in his amended complaint that Defendant is a debt collector under either of these definitions.   [*See generally* Doc. 8.]   To the contrary, Plaintiff appears to affirmatively acknowledge that Defendant operates as a creditor and only sought to collect credit card debts on accounts it originated. [*See id.* at 8-11 (asserting that the credit card accounts were "registered and maintained by Defendant" and that they were "issued by Defendant").]   As such, Plaintiff's FDCPA claims fail to state a claim for relief.   *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1282 (M.D. Ala. 2011) ("[I]t is clear that a 'debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'") (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also Sanford v. Discover Bank*, No. 1:18-CV-2682-CAP-CMS, 2019

19

WL 2354984, at *3 (N.D. Ga. Feb. 28, 2019), *report and recommendation adopted*, 2019 WL 2344146 (N.D. Ga. Mar. 19, 2019); *Khan v. Discovery Fin. Servs., LLC*, No. 12-14122-CIVMARTINEZ/LYNCH, 2012 WL 12895549, at *2 (S.D. Fla. Sept. 21, 2012).[9]

### 2.   Fraud

Plaintiff's second cause of action is for fraud, premised upon Defendant allegedly giving Plaintiff an improper address for service in the Prior Federal Action, which led to the dismissal of his case.  [Doc. 8, Count 2.]  Defendant contends that Plaintiff cannot state a claim for fraud because he cannot establish that he justifiably relied upon Defendant's representations and because, as the Eleventh Circuit discussed in its order affirming the dismissal of the Federal Action, it was Plaintiff's own failure to follow the rules for effectuating service of process under state and federal law that caused any injury to Plaintiff.  [Doc. 14-1 at 13-15.]

The undersigned agrees with the Eleventh Circuit's assessment in the Prior Federal Action, and concludes that Plaintiff's allegations therefore fail to state a

---

[9] That Plaintiff alleges he was not responsible for the debt does not change this analysis.  *See Janke*, 805 F. Supp. 2d at 1282 (holding that FDCPA's requirements that a defendant be a debt collector are not altered by allegation that debt was not plaintiff's).

plausible claim for fraud for the same reasons.  "Under Georgia law, the tort of fraud has five elements:  (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages as the proximate result of defendant's action."  *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (citing *Botes v. Weintraub*, No. 1:08-CV-01341-CAM, 2010 WL 966864, at *4 (N.D. Ga. Mar. 12, 2010) and *Parrish v. Jackson W. Jones P.C.*, 278 Ga. App. 645 (2006)).  Even accepting Plaintiff's allegations that Defendant represented that it could be served at the postal address it gave Plaintiff, that the representation was false, that Defendant knew it to be false, and that Defendant sought to induce Plaintiff to attempt service via that address, it ***still*** remains indisputably the case that Plaintiff's Prior Federal Action was dismissed and that any damages that accrued ***not because*** Plaintiff relied upon Defendant's representations, but, rather, ***because Plaintiff failed to follow the appropriate state and federal rules on service of process***.

Indeed, in the Prior Federal Action, Plaintiff actually argued to the Eleventh Circuit that his case should not be dismissed because (1) Defendant "referenced the United States Federal Court's online rules," and "Federal Civil Procedure Rule 4 (d)(1)(G) which directed [Plaintiff] to mail" his complaint to Defendant, *see Albert, v. Discover Bank*, No. 21-12011-E, 2021 WL 6062652, *6 (11th Cir. Dec. 18,

2021) (Appellant's Brief), and (2) Defendant's statements amounted to an oral waiver of service, *see Albert v. Discover Bank*, No. 21-12011-E, 2022 WL 307017, *2-3 (11th Cir. Jan. 29, 2022) (Appellant's Reply).  The Circuit Court rejected those arguments and concluded that it was Plaintiff own conduct, in "neglect[ing] to attach a summons to his complaint" and in failing to "sen[d] the bank a notice and request for waiver of service" form that actually doomed his attempt to serve Defendant.  *Albert*, 2022 WL 1184405, at *1.  Moreover, the court emphasized that Plaintiff never sought additional time to serve Defendant nor otherwise attempted to perfect service of process, ***even after being notified of the deficiencies***, and found that the conduct he alleged on the part of Defendant failed to demonstrate that some "outside factor" was the legal cause of his deficient service.  *Id.*  Based upon this holding, then, the undersigned agrees with Defendant that Plaintiff cannot establish that his alleged reliance on its purported representations caused the dismissal of his case or any of the subsequent injuries he suffered, and his fraud claim is therefore subject to dismissal.[10]

---

[10] Because Plaintiff's cause of action for fraud is subject to dismissal on this basis, his cause of action requesting tolling of the statute of limitations for his fraud claim should also be dismissed.

### 3.     Tortious Interference with Business Relations

Plaintiff's next claim is for tortious inference with business relations, in which he asserts that, because Defendant allegedly contacted his employer about the debt at issue in the State Action in connection with the garnishing of his wages, (1) it became aware of the State Action judgment and the orders in the Prior Federal Action, which reflected poorly on him and caused distress; (2) resulted in a delay in the approval of an investment or broker license; and (3) has threated to slow his career progression.  [Doc. 8, Count 4.]  Defendant argues that the claim should be dismissed because Plaintiff has not set forth factual allegations to plausibly establish each of the elements of a claim.  [Doc. 14-1 at 14-16.]

Under Georgia law, to establish a claim for tortious interference with a business relations, a Plaintiff must plausibly assert:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant . . . caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 230 (2015).  Among other things, Defendant argues that Plaintiff cannot establish the first or third elements of a prima facie case because he has not alleged that

Defendant acted wrongfully without privilege or that his employer ended their business relationship.  [Doc. 14-1 at 16.]

Defendant is largely correct.  With regard to the first element, the "filing garnishment actions to attempt to satisfy judgments does not by itself constitute abusive litigation," absent some showing that the parties' litigation conduct itself was abusive.  *Savage & Turner, P.C. v. Fid. & Deposit Co. of Md.*, 854 F. Supp. 2d 1359, 1361 (S.D. Ga. 2011).  Indeed, without some allegations "other than the simple act" of filing and pursuing a garnishment, a tortious interference claim based upon such conduct fails.  *Id.*

In this case, the only basis Plaintiff offers for why the communication with his employer was improper is that he was not responsible for the underlying debt(s).  [*See generally* Docs. 8.]  But in relying on that basis to support his tortious inference claim, Plaintiff runs directly into a *Rooker-Feldman* problem.  When a losing party to a Georgia court action raises a tortious interference claim based upon the winner's attempts to collect on that judgment, federal courts have regularly dismissed them under the *Rooker-Feldman* doctrine.  *See, e.g., Kasbekar v. Ivy Station Cmty. Ass'n, Inc.*, No. 1:18-CV-5928-JPB, 2020 WL 5792634, at *11 (N.D. Ga. Jan. 13, 2020) ("In this case, the State Law Counts ([including] tortious interference [among others]), which are all based on [plaintiffs'] loss of the Property and the injuries allegedly arising from such loss, are viable only if the

24

Gwinnett Court erred in issuing the Judgment against them."), *amended on denial of reconsideration*, 2020 WL 11231840 (N.D. Ga. Sept. 8, 2020), *and aff'd*, No. 20-10620, 2022 WL 17247551 (11th Cir. Nov. 28, 2022), *cert. denied*, 143 S. Ct. 2664 (2023); *see also Hawkins v. Credit One Bank*, No. 1:21-CV-04433-LMM-JCF, 2022 WL 3211634, at *2 (N.D. Ga. June 1, 2022) (dismissing claims for lack of subject matter jurisdiction under *Rooker-Feldman* where the plaintiff alleged that he did not owe the debt underlying a judgment entered by the state court); *Girard L. McEntee Ins. Agency, Inc. v. Valley Nat'l Bank*, No. 1:05-CV-1952-GET, 2006 WL 1097839, at *4 (N.D. Ga. Apr. 21, 2006) ("Plaintiffs' fourth claim is for intentional interference of business relations based on the freezing of plaintiffs' assets under the garnishment proceedings on the default judgment. It, too, is based on the premise that the default judgment was erroneous."). This is true even where, as Plaintiff does here, a party alleges that the judgment was itself obtained fraudulently or improperly. *See Butler*, 2015 WL 13777349, at *3 ("The gravamen of Butler's complaint is that defendants made fraudulent and misleading representations in connection with their attempt to collect a debt in the course of the previous state court proceedings in the Magistrate Court of Gwinnett County." Accordingly, "in order for Butler to prevail on her FDCPA claims, this Court would have to conclude that the default judgment of the Magistrate Court of Gwinnett County was erroneously entered as procured through fraud, which would directly

25

undermine the validity of the Magistrate Court's judgment by rendering it voidable under controlling law."); *see also Mason v. Midland Funding LLC*, No. 1:16-CV-02867-CC-RGV, 2017 WL 6994577, at *8 (N.D. Ga. July 27, 2017), *report and recommendation adopted as modified*, 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) (collecting cases rejecting arguments that *Rooker-Feldman* does not apply if a plaintiff challenges the alleged "fraudulent course of conduct" that led to a state court judgment); *Flatau v. Sherman Fin. Grp., LLC*, No. 5:14-CV-245(MTT), 2015 WL 8773299, at *6 (M.D. Ga. Dec. 14, 2015) ("[H]ere, the substance of the [plaintiffs'] claims"—that "the collection of an allegedly invalid state-court judgment" was improper because the plaintiffs were "not properly served and that [] did not owe the underlying debt"—was "inextricably intertwined with that judgment, and the Plaintiffs had a reasonable opportunity to challenge the validity of this judgment and the propriety of creditors' collection of it in state court.").

And because this Court cannot decide in Plaintiff's favor "without effectively deciding that the state court made an erroneous judgment" in the State Action, his tortious interference claim is effectively intertwined with the judgment in the State Action, and Plaintiff "cannot avoid *Rooker-Feldman* by framing [his] claims in terms of defendants' attempts to obtain exactly what the state court awarded to them."  *Butler*, 2015 WL 13777349 at *5; *see also Flatau*, 2015 WL 8773299 at *7 (citing *Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th

Cir. 2013)).  Accordingly, Plaintiff's tortious interference claim is barred by the *Rooker-Feldman* doctrine.

But even if the Court had subject-matter jurisdiction over it, Plaintiff's tortious interference claim would still be subject to dismissal.  "An essential element of a tortious interference with business relations claim is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the defendant." *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-CV-02490-SCJ, 2021 WL 912258, at *4 (N.D. Ga. Mar. 10, 2021) (cleaned up) (quoting *Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 834 (2019) (marks omitted)).  And when a pleading fails to "contain allegations about whether [a defendant]'s actions caused [the third party] to either discontinue or fail to enter into a business relationship," it is subject to dismissal.  *SHM Int'l Corp. v. Guangdong Chant Grp., Inc.*, No. 1:14-CV-1446-ODE, 2016 WL 4204553, at *6 (N.D. Ga. June 29, 2016); *see also Sci. Games Int'l, Inc. v. Alchemy3, LLC*, No. 1:11-CV-2859-SCJ, 2012 WL 13009221, at *2 (N.D. Ga. Sept. 25, 2012) ("SGI fails, however, to allege any facts in support of its allegation that Alchemy3's actions induced Iowa Lottery, the only customer identified in the complaint, to breach its contract with SGI or discontinue business with SGI.").  Thus, because Plaintiff remained employed, even if the Court had jurisdiction to consider

27

Plaintiff's tortious interference claim, he still has not alleged sufficient facts to raise a plausible claim for relief.

### 4.      Breach of Fiduciary Duty and Confidentiality

Plaintiff brings two causes of action for breach of fiduciary duty, one each for giving him improper service instructions and for allegedly opening a second credit card account without authorization, as well as a cause of action for breach of confidentiality for allegedly opening the fraudulent credit card accounts using his personal information.  [Doc. 8, Counts 5, 6, 9.]  Defendant argues that because "it is well accepted that the law 'does not create a confidential or fiduciary relationship between a financial institution and those with whom it deals,'" and because Plaintiff has not alleged the existence of any other special relationship between himself and Defendant that would give rise to such a duty, his claims should be dismissed.  [*See* Doc. 14-1 at 17-18 (quoting *Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286, 293 (2010) (collecting cases)).]

In Georgia, "[i]t is well settled that a claim for breach of fiduciary duty requires proof of three elements:  (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Webb v. Liberty Mortg.*, No. 1:12-CV-1677-CAP-ECS, 2012 WL 13014588, at *8 (N.D. Ga. Dec. 20, 2012) (quoting *Nash v. Studdard*, 294 Ga. App. 845, 849-50 (2008)), *report and recommendation adopted*, 2013 WL 12248092 (N.D. Ga. Mar. 11, 2013).

28

However, "fiduciary duties and obligations are [only] owed by those in confidential relationships," *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 606 (1998), and "[c]ourts in Georgia have held that there is no confidential relationship between a bank and its customers, a savings and loan association and its customers, a lender and borrower, or a mortgagee and mortgagor," as the "mere fact that one reposes trust and confidence in another does not create a confidential relationship," *Burch v. Chase Manhattan Mortg. Corp.*, No. 1:07-CV-121-JOF, 2008 WL 4265180, at *14 (N.D. Ga. Sept. 15, 2008) (collecting cases); *Russell v. Barnett Banks, Inc.*, 241 Ga. App. 672, 673 (1999) ("There is no confidential relationship between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past.") (*quoting Pardue v. Bankers First Fed. Sav. & Loan Ass'n*, 175 Ga. App. 814, 815 (1985) (marks omitted)).  And because Plaintiff has alleged no facts tending to establish that he and Defendant had anything other than a credit or banking relationship [*see* Doc. 8 at 23-28], there is no plausible basis to believe that he and Defendant had the type of relationship that could give rise to the special duties he seeks to base these claims on.  Thus, his claims based upon some form of special fiduciary and confidential relationship between him and Defendant are also subject to dismissal.

### 5.      Negligence

Plaintiff's next claim is for negligence, based upon Defendant allowing a second credit card account to be opened under his name (or doing so itself). [Doc. 8, Count 7.]  Defendant contends that Plaintiff's negligence claim should be dismissed because the statute of limitations began to run no later than when Plaintiff discovered the purportedly fraudulent account in 2020. [Doc. 14-1 at 18-21.]

Under Georgia law, the statute of limitations for a negligence claim is two years.  *See* O.C.G.A. § 9-3-33; *see also Morales v. Chase Home Fin., LLC*, No. 1:10-CV-3838-TCB-AJB, 2011 WL 13319195, at *14 (N.D. Ga. Mar. 8, 2011), *report and recommendation adopted*, 2011 WL 13319198 (N.D. Ga. Mar. 30, 2011); *Arch Ins. Co. v. Bennett*, No. 2:08-cv-75-RWS, 2009 WL 579393, *4 (N.D. Ga. Mar. 4, 2009) ("The applicable statute of limitation for ordinary negligence is two years.").  Even applying a liberal construction to Plaintiff's allegations, the latest he knew of the alleged conduct or injury forming the basis of his negligence claim was January 20, 2019, when he obtained his Experian credit report purporting to show a new credit card account opened in his name.  *See Albert*, Case No. 1:20-cv-5146-MLB, Doc. 1 at 36-39.  And because Plaintiff filed this case in on April 7, 2023, more than two years later, and has not alleged any facts that would tend to

30

show that the filing period should be tolled, his negligence claims is barred by the statute of limitations.

**6.      Breach of Contract and Covenant of Good Faith and Fair Dealing**

Plaintiff asserts a claim for breach of contract and the covenant of good faith and fair dealing in relation to the purported service instructions in the Prior Federal Action, apparently premised upon the duties arising because of his "Bank/Client contractual relationship" with Defendant.  [Doc. 8, Count 8.]  To the extent this claim is simply another "breach of fiduciary duty" type claim, it is subject to dismissal for the reasons explained in Section 4 above.  To the extent it is not, it nevertheless fails because in Georgia, "the common law requirement of good faith and fair dealing is not an independent source of duties for the parties to a contract," and, in order to state a claim for breach of contract or breach of the implied duty of good faith and fair dealing, "a plaintiff must set forth facts showing a breach of an actual term of an agreement." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (citing O.C.G.A. § 11-1-203 and *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 234 (2001)); *see also Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) ("The implied duty of good faith and fair dealing is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit

31

terms de facto when performance is maintained de jure . . . .  [I]t is not an undertaking that can be breached apart from those terms."); *Zone 4, Inc. v. Brown*, No. 1:19-CV-0676-LMM, 2019 WL 7833902, at *5 (N.D. Ga. June 12, 2019) (collecting cases).  "Put another way, 'there is no independent cause of action for violation of a duty of good faith and fair dealing in the performance of a contract apart from breach of an express term of the contract.'" *Augustin v. Walker Lake Emergency Grp., PC*, 364 Ga. App. 856, 862 (2022) (cleaned up) (quoting *Bankston v. RES-GA Twelve*, 334 Ga. App. 302, 304 (2015)).  And because Plaintiff has not identified any provision of a contract between himself and Defendant that Defendant is alleged to have violated, his claim fails.

### 8. Indemnification

Plaintiff next sets out a conclusory claim for "Indemnification," in which he states that he suffered losses due to Defendant's unidentified "wrongful actions and/or omissions," and that Defendant should indemnify him because he "was not at fault."  [Doc. 8, Count 10.]  The allegations and legal authority supporting this count are entirely unclear; and it therefore wholly fails to meet the requirements of Federal Rules of Civil Procedure 8 and 10 or otherwise satisfy the pleading standards set forth in *Twombly* and *Iqbal*, even taking Plaintiff's *pro se* status into account.

But even assuming a legal or factual basis to assert this claim, it still fails as

plead by Plaintiff.  "Indemnification claims are usually based on a contract," and Plaintiff has alleged no contract providing a right to indemnification.  *In re Money*, 375 B.R. 704, 709 (Bankr. N.D. Ga. 2007).  And while Georgia law sometimes imposes a duty to indemnify where "a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another," *City of Atlanta v. Benator*, 310 Ga. App. 597, 608-09 (2011) (citing *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 556 (2003)), Plaintiff has not asserted any allegations tending to demonstrate that he and Defendant are joint tortfeasors or otherwise showing that Defendant should be responsible for a wrong imputed to Plaintiff,[11] and therefore, "common law indemnity principles do not apply'" to save this claim either, *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 850 F. Supp. 2d 1336, 1357 (N.D. Ga. 2012) (quoting *Benator*, 310 Ga. App. at 609); *see also First Nat'l Ins. Co. of Am. v. Duncan Pipeline, Inc.*, No. 2:11-CV-85-RWS, 2012 WL 13018490, at *4 (N.D. Ga. Mar. 30, 2012) (citing *Jones v. Otis Elevator Co.*, 861 F.2d 655, 664-65 (11th Cir. 1988)).  Accordingly, Plaintiff's indemnification claim is also subject to dismissal.

---

[11] Except insofar as he challenges the judgment in the State Action; and to the extent his indemnification claim might be based upon challenging that judgment, it would be barred by the *Rooker-Feldman* doctrine for the reasons explained in Section 3 above.

### 9.    Humiliation From Unjustifiable Derogatory Order

Plaintiff's penultimate claim, entitled "Humiliation From Unjustifiable Derogatory Order 21-12011," simply reiterates the allegations and complaints asserted in his tortious interference count [*see* Doc. 8 at 30-31 (complaining that Defendant contacted his employer about debt at issue in the State Action and thus "continued to interfere")], and adds that it is also "unfair" that the Eleventh Circuit's "unjust derogatory Order" can be found on the internet [*id.* at 29]. As an initial matter, the undersigned is unable to identify a cognizable state or federal law claim premised on emotional distress resulting from a court order. But regardless, because the claim is premised upon Defendant contacting his employer about obtaining a garnishment to collect the State Action, it is barred by the *Rooker-Feldman* doctrine for the same reasons elucidated in Section 3 above. As to Plaintiff's concern that the Eleventh Circuit's order is available in some capacity online, Plaintiff fails to identify any act or omission or other obligation for which Defendant may be held responsible, and therefore fails to meet Federal Rule of Civil Procedure 8's requirement that complaints provide "defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Based upon the foregoing, then, Plaintiff's "humiliation" claim is subject to dismissal.

34

### 10. Punitive Damages

Finally, Plaintiff's claim for punitive damage fails as a matter of law. Under Georgia law, a request for punitive damages is not an independent cause of action, but is instead derivative of a plaintiff's substantive claims. *See Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (2005) (holding that a claim for punitive damages is not an independent cause of action). And because—for the reasons set forth above—none of Plaintiff's underlying claims has merit, Plaintiff's claim for punitive damages also fails as a matter of law.

### 11. Summary

Because each of Plaintiff's claims fails to state a plausible claim for relief and is therefore subject to dismissal, Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claims **DISMISSED**.

### PLAINTIFF'S MOTION TO STRIKE

Plaintiff's Motion to Strike contends that Defendant's motion to dismiss falsely asserts that the two credit card accounts discussed in the amended complaint are identical, and then asks that the Court strike that "statement" from the motion to dismiss and allow him to assert a new FDCPA claim based upon Defendant's mere assertion that they are the same. [Doc. 19.] But the Court has already explained that it disagrees with Defendant's contention that, for purposes of the motion to dismiss, the two accounts are the same credit card account; and the Court

has not based its analysis on that contention and argument.  [*See* note 3, *supra*.]
Therefore, Plaintiff's motion to strike is **DENIED AS MOOT** in relation to that
request.  As for Plaintiff's request for leave to assert a new FDCPA claim,[12] he still
has not provided the Court with any information or allegation to plausibly suggest
that Defendant is a debt collector as that term is defined by the FDCPA.  As a result,
his proposed amendment is futile, and his request for leave to amend is **DENIED**.
*See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) ("A
proposed amendment may be denied for futility when the complaint as amended
would still be properly dismissed.") (quotation and marks omitted).

---

[12] Magistrate judges are authorized to issue rulings as to any pretrial matter
pending in a civil case upon referral from the presiding district court judge, but
with respect to certain case-dispositive motions such motions to dismiss for failure
to state a claim, motions for summary judgment, and other motions to involuntarily
dismiss an action, magistrate judges are authorized only to issue a Report and
Recommendation to the district court judge.  28 U.S.C. § 636(b)(1)(A).  A motion
seeking leave to amend is not listed as one of the categories of motions that
magistrate judges lack authority to issue final rulings, and "[t]he weight of authority
holds that motions to amend pleadings are non-dispositive matters which may be
referred to a magistrate judge and reviewed by the district court under the 'clearly
erroneous standard.'"  *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga.
2008) (internal citations omitted); *see also Reeves v. DSI Sec. Servs., Inc.*, 395 F.
App'x 544, 548 (11th Cir. 2010) ("A district court may also designate a magistrate
judge to rule on certain non-dispositive pretrial motions, such as a motion to amend
a complaint."); *Palmore v. Hicks*, 383 F. App'x 897, 899-900 (11th Cir. 2010) ("An
order disposing of a motion to amend is a non-dispositive pretrial ruling.").

## NO OPPORTUNITY TO REPLEAD

Where it appears that a more carefully drafted complaint might state a claim, a *pro se* plaintiff should normally be given an opportunity to amend the complaint before the court dismisses the action; however, the Court need not grant leave to amend "where amendment would be futile." *De Souza v. JPMorgan Chase Home Lending Div.*, 608 F. App'x 776, 781 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).   The "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, and futility of the amendment can justify dismissal with prejudice." *Carvel v. Godley*, 404 F. App'x 359, 360 (11th Cir. 2010); *see also Marshall v. Aryan Unlimited Staffing Sol./Faneuil Inc./MacAndrews Holding*, 599 F. App'x 896, 898 (11th Cir. 2015) (upholding dismissal with prejudice of *pro se* plaintiff's action after "repeated failure, after multiple warnings, to file a complaint that complied with procedural rules and the court's orders"); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 998 (11th Cir. 2014) (concluding that court did not abuse it by not offering *pro se* plaintiff an opportunity to amend when there was no indication that if plaintiff was given a third bite at the apple, he would correct the numerous deficiencies in his complaint).

Given that Plaintiff has now filed multiple frivolous actions regarding the judgment in the State Action; has repeatedly filed deficient pleadings in this action;

has not seriously attempted to cure the problems identified by the Court; and in response to the motion to dismiss has only sought leave to amend to add another futile FDCPA claim, the undersigned has no reason to believe that Plaintiff would make any effort to comply with the Court's instructions if given yet another chance. But even putting aside those concerns, it is clear that the legal defects in Plaintiff's complaint cannot be cured by amendment.  As a result, this is not a case in which giving a *pro se* plaintiff an opportunity to file an amended complaint might allow him to state a non-futile claim for relief.  *See Moskovits v. Mercedes-Benz USA, LLC*, No. 22-10664, 2022 WL 17259158, at *4 (11th Cir. Nov. 29, 2022) (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend where amendment would have been futile).  Because any subsequent amendment would be futile and would interfere with the Court's ability to protect its docket from frivolous and abusive litigation, it is **RECOMMENDED** that Plaintiff's case be **DISMISSED WITHOUT AN OPPORTUNITY TO REPLEAD**.

## CONCLUSION

Based upon the reasons set forth above, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** and Plaintiff's claims **DISMISSED**. [Doc. 14.]  Plaintiff's Motion to Strike is **DENIED**.  [Doc. 19.]

SO ORDERED and RECOMMENDED this 19th day of September, 2023.

_____
JOHN K. LARKINS III
United States Magistrate Judge